## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DONTE BUCKMIRE, | |
| Plaintiff, | |
| v. | Civil Action No. 1:24-cv-12110-AK |
| WAYFAIR, INC., COLBY GRENIER and THERESE BARTOLINI, | |
| Defendants. | |

## WAYFAIR'S ANSWER TO COMPLAINT

Wayfair, Inc. ("Wayfair"), Colby Grenier ("Grenier"), and Therese Bartolini ("Bartolini") (collectively, "Defendants") by and through their undersigned counsel, hereby submit their Answer to Plaintiff Donte Buckmire's ("Plaintiff") Complaint and state as follows:

## THE PARTIES

### COMPLAINT ¶1:

The Plaintiff, DONTE BUCKMIRE ("Plaintiff"), a former Suffolk County, MA resident during his employment with Defendant Wayfair, Inc., is an individual now residing in Washington, D.C.

### ANSWER:

Defendants lack sufficient knowledge and information to respond to the allegations set forth in Paragraph 1 of the Complaint and therefore leave Plaintiff to his proof.

### COMPLAINT ¶2:

The Defendant, WAYFAIR ("Defendant Wayfair"), is a company with a principal place of business at 4 Copley Place, Boston, MA 02116.

### ANSWER:

Defendants admit the allegations set forth in Paragraph 2.

**COMPLAINT ¶3:**

The Defendant, COLBY GRENIER ("Defendant Grenier"), is an individual residing at 4 Copley Place, Boston, MA 02116, and at all relevant times, was employed as the Plaintiff's supervisor and/or superior.

**ANSWER:**

Defendants admit that Mr. Grenier was Plaintiff's manager from on or about August 20, 2020 until on or about June 9, 2021. Defendants deny the remaining allegations set forth in Paragraph 3.

**COMPLAINT ¶4:**

The Defendant, THERESE BARTOLLONI ("DEFENDANT Bartolloni") [*sic*], is an individual residing at 4 Copley Place, Boston, MA 02116, and at all relevant times, was employed as the Plaintiff's supervisor and/or superior.

**ANSWER:**

Defendants admit that Ms. Bartolini was Plaintiff's skip-level manager (his manager's manager) at all relevant times. Defendants deny the remaining allegations in Paragraph 4.

## FACTUAL ALLEGATIONS

**COMPLAINT ¶5:**

The Plaintiff refers to the allegations of Paragraphs 1 through 4, and by such reference repleads and incorporates them as though fully set forth here.

**ANSWER:**

This Paragraph consists of a statement of incorporation, to which no response is required. To the extent that a response is required, Defendants incorporate their responses to the preceding paragraphs.

**COMPLAINT ¶6:**

The Plaintiff, a Black American, began his full-time employment with the Defendant Wayfair as a Product Design Specialist for Defendant Wayfair's Storefront - Homebase Design System Team, Media, and Loyalty & Finance on September 1, 2019 in their Boston, MA office.

**ANSWER:**

Defendants admit that Plaintiff began working for Wayfair as a full-time Level 3 Product Design Manager on the Enterprise Homebase Team in Boston, MA on September 3, 2019. Defendants further admit that Plaintiff voluntarily identified his Race/Ethnicity to Wayfair as "Black (United States of America)." Defendants deny the remaining allegations in Paragraph 6.

**COMPLAINT ¶7:**

The Plaintiff is an award winning User Experience Designer (UX) with more than eight years of experience specializing in Product Design (PD) and Information Architecture (IA).

**ANSWER:**

Defendants lack sufficient knowledge and information to respond to the allegations set forth in Paragraph 7 of the Complaint and therefore leave Plaintiff to his proof.

**COMPLAINT ¶8:**

On or about August 15, 2020, despite the Plaintiff's record of successful performance, Defendant Wayfair failed to promote the Plaintiff and instead promoted his Caucasian counterpart, Karissa Woodward ("Ms. Woodward"), who was less qualified, less experienced, less skilled, and less successful than the Plaintiff.

**ANSWER:**

Defendants admit that Wayfair promoted Karissa Woodward-Hobson to a Level 4 position on or about September 27, 2020. Defendants further admit that Ms. Woodward voluntarily identified her Race/Ethnicity to Wayfair as "Caucasian." Defendants deny the remaining allegations in Paragraph 8.

**COMPLAINT ¶9:**

Indeed, the Plaintiff's manager at the time, Natasha Lloyd ("Ms. Lloyd"), had attempted to formally recommend the Plaintiff for a promotion to an L4 level given his success and stellar performance on or about July 2020.

312304489v.3

**ANSWER:**

Defendants admit that Ms. Lloyd was Plaintiff's manager in July 2020.  Defendants deny

the remaining allegations set forth in Paragraph 9.

**COMPLAINT ¶10:**

However, Defendant Colby Grenier, the Plaintiff's new manager (Caucasian) who replaced
Ms. Llyod, refused to follow through with the Plaintiff's promotion and disregarded Ms. Llyod's
attempted recommendation for promotion.

**ANSWER:**

Defendants admit that Mr. Grenier became Plaintiff's manager on or about August 20,

2020 after Ms. Lloyd left Wayfair and that Mr. Grenier did not put Plaintiff up for a promotion to

a Level 4 position.  Defendants deny the remaining allegations in Paragraph 10.

**COMPLAINT ¶11:**

Subsequently, during the winter review cycle, during January 2021, the Plaintiff once again
addressed his promotion request and spoke with Defendant Grenier about whether he would be a
candidate for a promotion during that cycle.

**ANSWER:**

Defendants admit that, in or around January 2021, Plaintiff asked Mr. Grenier if he was

going to put him up for a promotion to a Level 4 position during the Winter Performance Review

Cycle (covering July 2020 to December 2020) and that Mr. Grenier told Plaintiff that it was not

his intention to put him up for promotion that cycle because Plaintiff still had some opportunity

areas that needed development.  To the extent any allegations remain in Paragraph 11, Defendants

deny them.

**COMPLAINT ¶12:**

In response, Defendant Grenier, despite Ms. Lloyd's prior recommendation of the Plaintiff
for a promotion, stated that he was not aware that a promotion was his goal and that such a request
would typically be something that they would work together on to create a promotion case.

312304489v.3

**ANSWER:**

Defendants admit that Mr. Grenier told Plaintiff that Mr. Grenier would work together with Plaintiff to try to ensure that Plaintiff had opportunities to develop the professional skills and competencies necessary to be put forward for a promotion in the future. Defendants deny the remaining allegations set forth in Paragraph 12.

**COMPLAINT ¶13:**

No substantive efforts however were made by Defendant Grenier to facilitate the Plaintiff's promotion request.

**ANSWER:**

Defendants deny the allegations set forth in Paragraph 13.

**COMPLAINT ¶14:**

For instance, even after the Plaintiff had initially shared his promotion intentions with Defendant Grenier, he did not make any effort to ensure that the work the Plaintiff was performing was compliant with L4 competencies nor did he provide the Plaintiff with clear steps that would allow him to become an L4.

**ANSWER:**

Defendants deny the allegations set forth in Paragraph 14.

**COMPLAINT ¶15:**

When the Plaintiff followed up with Defendant Grenier again on the status of his promotion candidacy during May, 2021, Defendant Grenier then indicated that it was not his intention to support the Plaintiff's candidacy for a promotion.

**ANSWER:**

Defendants admit that, in or around May 2021, Plaintiff asked Mr. Grenier if he was going to put him up for a promotion to a Level 4 position and that Mr. Grenier told Plaintiff that it was not his intention to put him up for promotion at that time because Plaintiff still had some opportunity areas that needed development. To the extent any allegations remain in Paragraph 15, Defendants deny them.

312304489v.3

**COMPLAINT ¶16:**

This was inconsistent with the representations made by Defendant Grenier and with the purpose of their "Career Development" meetings they had held every 6 weeks.

**ANSWER:**

Defendants admit that Mr. Grenier had regular career development meetings with Plaintiff to discuss Plaintiff's performance as well as areas where Plaintiff needed to develop certain skills and competencies in order to show readiness for promotion in light of Wayfair's expectations for Level 4 employees. Defendants deny the remaining allegations set forth in Paragraph 16.

**COMPLAINT ¶17:**

When the Plaintiff questioned this, Defendant Grenier stated, without any legitimate basis, that he did not believe the Plaintiff would be successful in achieving a promotion.

**ANSWER:**

Defendants deny the allegations set forth in Paragraph 17.

**COMPLAINT ¶18:**

Defendant Grenier also stated that because the Plaintiff had "hopped around to different teams over the last 9-12 months", such experience did not show a deep domain knowledge and/or understanding necessary for a promotion.

**ANSWER:**

Defendants admit that, because of the short-term nature of Plaintiff's work with teams across Wayfair through the pilot program ("Homebase Agents") that Plaintiff designed, Mr. Grenier told Plaintiff that it was challenging to measure Plaintiff's long-term impact on those teams and that long-term impact was a consideration for promotion. Defendants deny the remaining allegations set forth in Paragraph 18.

**COMPLAINT ¶19:**

This approach regarding the versatile experience the Plaintiff acquired, however, is contrary to the traditional manner in which Defendant Wayfair had conducted promotions of other Caucasian employees.

**<u>ANSWER:</u>**

Defendants deny the allegations set forth in Paragraph 19.

**<u>COMPLAINT ¶20:</u>**

Defendant Grenier's stated reasons were infused with racial discriminatory bias and a prejudicial view of the Plaintiff's qualifications and skill.

**<u>ANSWER:</u>**

Defendants deny the allegations set forth in Paragraph 20.

**<u>COMPLAINT ¶21:</u>**

Indeed, Defendant Grenier did not assist the Plaintiff in any way to enable his promotion success and yet, he provided valuable assistance to the Plaintiff's Caucasian colleagues.

**<u>ANSWER:</u>**

Defendants deny the allegations set forth in Paragraph 21.

**<u>COMPLAINT ¶22:</u>**

Nonetheless, while the Plaintiff served on the Homebase team, he excelled and achieved success in demonstrating successful competencies required for his promotion.

**<u>ANSWER:</u>**

Defendants deny the allegations set forth in Paragraph 22.

**<u>COMPLAINT ¶23:</u>**

The Defendants, however, have unfairly considered and minimized the Plaintiff's successes and have repeatedly failed to promote him to the L4 position he rightfully earned.

**<u>ANSWER:</u>**

Defendants deny the allegations set forth in Paragraph 23.

**<u>COMPLAINT ¶24:</u>**

Meanwhile, the Defendants have treated and promoted the Plaintiff's Caucasian colleagues more favorably, despite their lesser experience, lesser qualifications and lesser success than the Plaintiff's.

**<u>ANSWER:</u>**

Defendants deny the allegations set forth in Paragraph 24.

**COMPLAINT ¶25:**

During March 2021, for example, the Defendants promoted his Caucasian colleague, Daniel Staton, not only to an L3 position, but also to an XD lead role instead of the Plaintiff.

**ANSWER:**

Defendants admit that Wayfair promoted Daniel Staton to a Level 3 position (Product Design Manager) on or about March 2020. Defendants further admit that Mr. Staton voluntarily identified his Race/Ethnicity to Wayfair as "Caucasian." Defendants deny the remaining allegations in Paragraph 25.

**COMPLAINT ¶26:**

Prior to her departure, Ms. Lloyd had originally recommended the Plaintiff for the position of XD lead for Homebase Ent Design team and had recommended that he be responsible for two of her direct reports. In Ms. Llyod's view, Mr. Staton was not yet ready to be responsible for these two direct reports.

**ANSWER:**

Defendants lack sufficient knowledge and information to respond to the allegations set forth in Paragraph 26 of the Complaint as to what Ms. Lloyd thought about Mr. Staton's readiness to supervise two of her direct reports and therefore leave Plaintiff to his proof. Defendants deny the remaining allegations set forth in Paragraph 26.

**COMPLAINT ¶27:**

Nonetheless, Mr. Staton was promoted to this role by Ms. Llyod and Defendant Wayfair. Additionally, instead of the Plaintiff receiving two direct reports, Ms. Woodward received those two reports.

**ANSWER:**

Defendants admit that Wayfair promoted Daniel Staton to a Level 3 position (Product Design Manager) on or about March 2020. Defendants admit that Ms. Woodward took on two direct reports when she was promoted into a Level 4 position on or about September 27, 2020 and

that those two direct reports had previously reported to Ms. Lloyd.  Defendants deny the remaining allegations in Paragraph 27.

**COMPLAINT ¶28:**

Defendants also informed the Plaintiff that he was not eligible for a promotion during 2020 because he had been at the company for less than a year, and that only employees who have a one year tenure are eligible for promotions.

**ANSWER:**

Defendants deny the allegations set forth in Paragraph 28.

**COMPLAINT ¶29:**

This stated reason was false, however, as the Plaintiff's Caucasian co-worker, Amber Tabone, was promoted during the last review cycle to an L5 position and she had only worked for Defendant Wayfair for approximately 9 months.

**ANSWER:**

Defendants admit that Wayfair promoted Ms. Tabone to a Level 5 position nine months after she joined Wayfair and that Ms. Tabone  voluntarily identified her Race/Ethnicity to Wayfair as "Caucasian."  Defendants deny the remaining allegations in Paragraph 29.

**COMPLAINT ¶30:**

In addition to unfairly and discriminatorily denying the Plaintiff's promotional opportunities on a recurring basis, the Defendants also treated the Plaintiff less favorably in their recognition of his work achievements.

**ANSWER:**

Defendants deny the allegations set forth in Paragraph 30.

**COMPLAINT ¶31:**

During his tenure with the Defendant Wayfair and while on the Homebase team, the Plaintiff created an important initiative after identifying a need and/or gap on the team.

**ANSWER:**

Defendants admit that Plaintiff created a pilot program ("Homebase Agents") to try to increase design system efficiency across the business. Defendants deny the remaining allegations set forth in Paragraph 31.

**COMPLAINT ¶32:**

This gap involved validating Defendant Wayfair's end users. The Plaintiff's initiative closed this gap and provided a much needed and valued service to Defendant Wayfair.

**ANSWER:**

Defendants lack sufficient knowledge and information about what Plaintiff means when he alleges that his pilot program "validat[ed] Defendant Wayfair's end users" and leave Plaintiff to his proof. Defendants admit that Plaintiff devised a pilot program ("Homebase Agents") to try to increase design system efficiency across the business. Defendants deny the remaining allegations set forth in Paragraph 32.

**COMPLAINT ¶33:**

Indeed, the Plaintiff secured six (6) consulting engagements to date since the inception of this program in April 2020 while also working full time on the Homebase team.

**ANSWER:**

Defendants deny the allegations set forth in Paragraph 33.

**COMPLAINT ¶34:**

The Plaintiff highlighted this success with his colleague, Defendant Therese Bartolloni [*sic*], and Defendant Grenier, and told them that he would like to continue doing this consulting work full time and build out a team around this program since he had demonstrated the demand for this role and its proven success.

**ANSWER:**

Defendants admit that Plaintiff communicated his desire to continue the pilot program and to add personnel to the team for him to manage. Defendants deny the remaining allegations in Paragraph 34.

**COMPLAINT ¶35:**

However, instead of lauding his success, the Defendants heavily and unfairly scrutinized this initiative and unilaterally terminated the Plaintiff's consultancy program allegedly for budgetary reasons on or about March 22, 2021.

**ANSWER:**

Defendants admit that Wayfair discontinued the pilot program in or around May 2021 due

to budgetary reasons.  Defendants deny the remaining allegations set forth in Paragraph 35.

**COMPLAINT ¶36:**

Indeed, the Plaintiff subsequently learned that on or about May 12th, 2021 that the Homebase team (the team that the Plaintiff was previously on that failed to support and fund the Plaintiff for this program) has now created an identical consultancy program to the one that the Plaintiff had created and that program, spearheaded by Caucasian colleagues, has received full support from the Defendants.

**ANSWER:**

Defendants deny the allegations set forth in Paragraph 36.

**COMPLAINT ¶37:**

During his tenure with the Defendants, the Plaintiff has repeatedly not been provided the same opportunities as his Caucasian colleagues with respect to these consulting opportunities.

**ANSWER:**

Defendants deny the allegations set forth in Paragraph 37.

**COMPLAINT ¶38:**

The Plaintiff's Caucasian colleague, Sarah Heilbronner, was formally on the Homebase team at the same time the Plaintiff had also served on that team.

**ANSWER:**

Defendants admit that Ms. Heilbronner and Plaintiff both worked on the Homebase team

for a period of time.  Defendants further admit that Ms. Heilbronner voluntarily identified her

Race/Ethnicity to Wayfair as "Caucasian."  To the extent any allegations remain in Paragraph 38,

Defendants deny them.

312304489v.3

**COMPLAINT ¶39:**

When she left the Homebase team to pursue consulting opportunities, Defendants Grenier and Bartolini fully supported her efforts and cultivated opportunities for her to continue this work.

**ANSWER:**

Defendants admit that Mr. Grenier and Ms. Bartolini offered professional support to Ms. Heilbronner – as they did to Plaintiff – and that Ms. Heilbronner transferred roles during her time at Wayfair.  To the extent any allegations remain in Paragraph 39, Defendants deny them.

**COMPLAINT ¶40:**

In addition, they supported her efforts to become promoted to an L3 based in part on her consultancy work.

**ANSWER:**

Defendants admit that Mr. Grenier and Ms. Bartolini offered professional support to Ms. Heilbronner in her pursuit of a promotion – as they did to Plaintiff.  To the extent any allegations remain in Paragraph 40, Defendants deny them.

**COMPLAINT ¶41:**

Overall, the Defendants have handled the terms and conditions of the Plaintiff's employment and promotion applications in a disparate and discriminatory manner in a hostile work environment infused by racial discrimination.

**ANSWER:**

Defendants deny the allegations set forth in Paragraph 41.

**COMPLAINT ¶42:**

This disparate treatment has pervaded the manner in which the promotion and consulting process has been handled, the manner in which the Defendants have responded to casual or tentative inquiries made by the Plaintiff regarding his promotion, his consultancy initiatives, and the manner in which the Defendants have discriminatorily excluded members of minority groups from advancement. *See* Leon F. Litwack, *Trouble in Mind: Black Southerners in the Age of Jim Crow xiv-xv* (Vintage ed. 1999) (during Jim Crow era, "[e]vidence of success, no matter how it was achieved or displayed, made every black man and woman vulnerable. To convey an air of independence . . . . was to invite trouble. The simple fact was that many whites equated black success with 'uppityness,"impudence," getting out of place,' and pretensions toward racial equality").

**ANSWER:**

Defendants deny the allegations set forth in Paragraph 42.

**COMPLAINT ¶43:**

By their actions and inaction, the Defendants have created a hostile work environment that was severe and pervasive, and one that failed to provide the Plaintiff with equal opportunity for advancement, consulting opportunities and support as his Caucasian colleagues.

**ANSWER:**

Defendants deny the allegations set forth in Paragraph 43.

**COMPLAINT ¶44:**

Additionally, when the Plaintiff complained about racially discriminatory treatment by the Defendants during May 2021 through July 2021, the Defendants failed to conduct a fair and impartial investigation, and remedy the disparate treatment.

**ANSWER:**

Defendants deny the allegations set forth in Paragraph 44.

**COMPLAINT ¶45:**

In fact, the Defendants' disparate treatment of the Plaintiff increased.

**ANSWER:**

Defendants deny the allegations set forth in Paragraph 45.

**COMPLAINT ¶46:**

Indeed, during June 2021, during the summer review cycle, the Plaintiff was once again treated disparately as Defendant Grenier did not permit the Plaintiff to provide him with performance feedback and also failed to provide feedback to the Plaintiff about his performance. This is in spite of the fact that Defendant Grenier had discussed with the Plaintiff on multiple occasions that he would serve as the Plaintiff's reporting manager through the review cycle. This was intentional, deliberate and functioned as yet another effort to prevent the Plaintiff from being promoted.

**ANSWER:**

Defendants deny the allegations set forth in Paragraph 46.

**COMPLAINT ¶47:**

Overall, the Defendants have not treated the Plaintiff's employment or evaluations equally, have created a hostile work environment, and have demonstrated a bias against promoting Black people such as the Plaintiff. Also, when it looked like the Plaintiff would emerge as a viable candidate for viable consulting opportunities and/or for a promotion, the Defendants repeatedly took steps to prevent this from happening and treated him less favorably than his Caucasian colleagues.

**ANSWER:**

Defendants deny the allegations set forth in Paragraph 47.

**COMPLAINT ¶48:**

The Defendants' Human Resources department, however, failed to follow through on an effective and impartial investigation of the Plaintiff's complaint and failed to update the Plaintiff. The Defendants also failed to remedy the Plaintiff's disparate treatment, leaving the Plaintiff with no recourse to rectify the Defendants' misconduct.

**ANSWER:**

Defendants deny the allegations set forth in Paragraph 48.

**COMPLAINT ¶49:**

These intolerable working conditions, and the harm they caused on the Plaintiff, left him with no choice but to resign during July 2021.

**ANSWER:**

Defendants deny the allegations set forth in Paragraph 49,

**COMPLAINT ¶50:**

Notably, the Defendants once again failed to follow its own policies and failed to provide the Plaintiff with an exit interview upon his departure.

**ANSWER:**

Defendants deny the allegations set forth in Paragraph 50.

**COMPLAINT ¶51:**

During August 2021, the Plaintiff met with Defendants' Human Resources' representative who acknowledged that the Plaintiff's supervisors did indeed fail him and choose not to set him up for success.

**ANSWER:**

Defendants deny the allegations set forth in Paragraph 51.

**COMPLAINT ¶52:**

The Plaintiff subsequently filed his complaint against the Defendants with the Massachusetts Commission Against Discrimination.

**ANSWER:**

Defendants deny the allegations in Paragraph 52. Answering further, Defendants state that

Plaintiff filed a Complaint with the Massachusetts Commission Against Discrimination on or

about June 4, 2021.

**COUNT ONE**
**G.L. 151B and TITLE VII (RACE DISCRIMINATION/HOSTILE WORK**
**ENVIRONMENT)**
**<u>Plaintiff v. Wayfair</u>**

**COMPLAINT ¶53:**

The Plaintiff refers to the allegations of Paragraphs 1 through 52, and by such reference, repleads and incorporates them as though fully set forth here.

**ANSWER:**

This Paragraph consists of a statement of incorporation, to which no response is required.

To the extent that a response is required, Defendants incorporate their responses to the preceding

paragraphs.

**COMPLAINT ¶54:**

The conduct of Defendant Wayfair, as set forth above, constitutes unlawful discrimination against the Plaintiff on the basis of his race and/or a hostile work environment.

**ANSWER:**

Defendants deny the allegations set forth in Paragraph 54.

**COMPLAINT ¶55:**

Said conduct of Defendant Wayfair also constitutes a violation of public policy.

**ANSWER:**

Defendants deny the allegations set forth in Paragraph 55.

**COMPLAINT ¶56:**

As a proximate result of Defendant Wayfair 's conduct, the Plaintiff has suffered and continues to suffer substantial losses in earning, job experience, retirement benefits, and other employee benefits that he would have received absent Defendant Wayfair 's discrimination. Furthermore, the Plaintiff has incurred additional costs and expenses due to Defendant's discrimination.

**ANSWER:**

Defendants deny the allegations set forth in Paragraph 56.

**COMPLAINT ¶57:**

As a further proximate result of the above-mentioned acts, the Plaintiff has suffered humiliation, mental pain and anguish, all to the Plaintiff's damage.

**ANSWER:**

Defendants deny the allegations set forth in Paragraph 57.

**COMPLAINT ¶58:**

The above-mentioned acts of Defendant Wayfair were willful, wanton, malicious, and oppressive, and justify the awarding of exemplary and punitive damages.

**ANSWER:**

Defendants deny the allegations set forth in Paragraph 58.

**COUNT TWO**
**G.L. C. 151B/TITLE VII AIDING AND ABETTING &**
**UNLAWFUL INTERFERENCE**
**Plaintiff v. Defendant Grenier & Defendant Bartollini [*sic*]**

**COMPLAINT ¶59:**

The Plaintiff refers to the allegations of Paragraphs 1 through 58, and by such reference repleads and incorporates them as though fully set forth here.

**ANSWER:**

This Paragraph consists of a statement of incorporation, to which no response is required. To the extent that a response is required, Defendants incorporate their responses to the preceding paragraphs.

**COMPLAINT ¶60:**

At all times relevant, Defendants Grenier and Bartollini [*sic*] were employed by Defendant Wayfair as the Plaintiff's supervisor and/or superior.

**ANSWER:**

Defendants admit that Mr. Grenier was Plaintiff's manager from on or about August 20, 2020 until on or about June 9, 2021. Defendants admit that Ms. Bartolini was Plaintiff's skip-level manager (his manager's manager) at all relevant times. To the extent any allegations remain in Paragraph 60, Defendants deny them.

**COMPLAINT ¶61:**

Defendants Grenier and Bartollini [*sic*], as agents of Wayfair, discriminated against the Plaintiff, interfered with the Plaintiff's rights, incited, coerced, and/or aided and abetted Defendant Wayfair in discriminating against the Plaintiff on account of his race in violation of G.L. c. 151B/Title VII.

**ANSWER:**

Defendants deny the allegations set forth in Paragraph 61.

**COMPLAINT ¶62:**

As a result thereof, the Plaintiff has suffered damages including, but not limited to, lost wages, back pay, front pay, and emotional damages.

**ANSWER:**

Defendants deny the allegations set forth in Paragraph 62.

## COUNT THREE
## G.L. 151B and TITLE VII – RETALIATION
## <u>Plaintiff v. Wayfair</u>

**COMPLAINT ¶63:**

The Plaintiff refers to the allegations of Paragraphs 1 through 62, and by such reference, repleads and incorporates them as though fully set forth here.

**ANSWER:**

This Paragraph consists of a statement of incorporation, to which no response is required.

To the extent that a response is required, Defendants incorporate their responses to the preceding paragraphs.

**COMPLAINT ¶64:**

The conduct of Defendant Wayfair, as set forth above, constitutes unlawful retaliation against the Plaintiff.

**ANSWER:**

Defendants deny the allegations set forth in Paragraph 64.

**COMPLAINT ¶65:**

Said conduct of Defendant Wayfair also constitutes a violation of public policy.

**ANSWER:**

Defendants deny the allegations set forth in Paragraph 65.

**COMPLAINT ¶66:**

As a proximate result of Defendant Wayfair 's conduct, the Plaintiff has suffered and continues to suffer substantial losses in earning, job experience, retirement benefits, and other employee benefits that he would have received absent Defendant Wayfair 's discrimination. Furthermore, the Plaintiff has incurred additional costs and expenses due to Defendant's discrimination.

**ANSWER:**

Defendants deny the allegations set forth in Paragraph 66.

**COMPLAINT ¶67:**

As a further proximate result of the above-mentioned acts, the Plaintiff has suffered humiliation, mental pain and anguish, all to the Plaintiff's damage.

**ANSWER:**

Defendants deny the allegations set forth in Paragraph 67.

**COMPLAINT ¶68:**

The above-mentioned acts of Defendant Wayfair were willful, wanton, malicious, and oppressive, and justify the awarding of exemplary and punitive damages.

**ANSWER:**

Defendants deny the allegations set forth in Paragraph 68.

WHEREFORE, the Plaintiff demands judgment against the Defendants as follows:

    a.    That actual damages be awarded to the Plaintiff;
    b.    That compensatory damages be awarded to the Plaintiff;
    c.    That punitive fines be assessed against the Defendants;
    d.    That the Plaintiff be awarded the costs of this action;
    e.    Reasonable attorney's fees; and
    f.    Such other and further relief as the court may deem necessary and proper.

**ANSWER:**

Defendants deny that Plaintiff is entitled to any relief whatsoever, including the relief listed

in the unnumbered WHEREFORE paragraph and its subsections (a) through (f).

## ADDITIONAL DEFENSES

Defendants assert the following additional defenses, without assuming any burden of production or proof that they would not otherwise have. Defendants reserve the right to supplement their Additional Defenses, as their investigation of the facts of this case is not complete, nor has discovery even commenced in this case. The additional defenses asserted herein are based on Defendants' knowledge, information, and belief as of the date of this pleading.

### FIRST DEFENSE

The Complaint fails to state a claim upon which relief can be granted.

### SECOND DEFENSE

Plaintiff's claims are barred to the extent that he fails to set forth a *prima facie* case of any of his causes of action.

### THIRD DEFENSE

Plaintiff's claims are barred to the extent that he failed to satisfy or exhaust the statutory, administrative and/or judicial prerequisites for bringing his claims.

### FOURTH DEFENSE

To the extent Plaintiff's claims are based on acts that occurred prior to any applicable statute of limitations, Plaintiff's claims are time-barred, in whole or in part.

### FIFTH DEFENSE

Without conceding that Plaintiff has suffered any damages as a result of the purportedly wrongful acts of any Defendant, Plaintiff has failed to mitigate his damages.

### SIXTH DEFENSE

To the extent Plaintiff alleges that any of Wayfair's employees acted in an improper or illegal manner, such conduct, if it occurred, was outside the course and scope of their employment,

was not authorized, ratified, or condoned by Wayfair, and was undertaken without the knowledge or consent of Wayfair.  Thus, Wayfair is not liable for any such conduct, if it occurred.

## SEVENTH DEFENSE

Plaintiff's claims are barred, in whole or in part, because Wayfair exercised reasonable care to prevent and promptly correct any discriminatory or retaliatory behavior, and Plaintiff unreasonably failed to take advantage of any preventive or corrective opportunities provided or to avoid harm otherwise.

## EIGHTH DEFENSE

Plaintiff's claims are not actionable because the employment practices and/or decisions challenged in the Complaint are justified by legitimate, non-discriminatory reasons.

## NINTH DEFENSE

Wayfair avers that even if some impermissible motive were a factor in any employment decision(s) concerning Plaintiff, a claim that Wayfair expressly denies, the same decision(s) would have been reached for legitimate business reasons.

## TENTH DEFENSE

Plaintiff is not entitled to punitive damages because Defendants did not engage in discrimination or retaliation with malice or reckless indifference to Plaintiff's protected rights, or willfully or deliberately discriminate against Plaintiff.

## RESERVATION OF RIGHTS

Wayfair reserves the right to raise additional defenses as may be discovered during the course of these proceedings.

312304489v.3

Dated: September 23, 2024

Respectfully submitted,

WAYFAIR, INC., COLBY GRENIER,
WAND THERESE BARTOLINI

By their attorney,

*/s/ Lynn A. Kappelman*

Lynn A. Kappelman (BBO No. 642017)
Emily J. Miller (BBO No. 705662)
SEYFARTH SHAW LLP
Seaport East
Two Seaport Lane, Suite 300
Boston, MA 02210-2028
Telephone:     (617) 946-4800
Fax:               (617) 946-4801
lkappelman@seyfarth.com
emmiller@seyfarth.com

312304489v.3

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 23, 2024, a true copy of the foregoing document was electronically filed through the Court's ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants.

*/s/ Lynn A. Kappelman*
Lynn A. Kappelman

312304489v.3